UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ENNIS STATE BANK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:15-CV-2087-B |
| | § | |
| UNITED STATES LIABILITY | § | |
| INSURANCE COMPANY, ANGEL LUIS | § | |
| MARTINEZ, JR., and JOHN DOE, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant United States Liability Insurance Company's Motion for Summary Judgment (Doc. 8). For the reasons that follow, the Court **GRANTS** the Motion.

### I.

### BACKGROUND

Plaintiff Ennis State Bank ("ESB") brought this action to recover money it claims it is due under an insurance policy issued by Defendant United States Liability Insurance Company ("USLI"). *See* Doc. 1-3, Pl.'s Original Pet. USLI issued the policy at issue, No. BP 1558620A (the "Policy"), to Jungle Jacks, Inc. ("Jungle Jacks"), covering property located at 905 East Ennis Avenue, Ennis, Texas 75119 (the "Property") from October 20, 2012, to October 20, 2013. Doc. 13-4, Pl.'s App. 42. The Policy originally named Citizens National Bank of Texas ("CNB") as the Loss Payee, ostensibly because it owned the Property. *Id.* at 111–12 (identifying the applicable Loss Payee clause as Paragraph D, titled "Building Owner Loss Payable Clause"). Five days after the damage underlying this litigation occurred, this provision was amended to replace CNB with ESB as Loss Payee, effective

- 1 -

May 21, 2013. *Id.* at 38–40.[1] A second endorsement added ESB as an additional insured by virtue of its status as mortgagee. *Id.* at 36–37. As a result of the damage, USLI issued two checks payable to Jungle Jacks and ESB, but ESB refused to accept the checks. Doc. 1-3, Pl.'s Original Pet. 3–4; Doc. 22, Def.'s First Am. Answer ¶ 6. This lawsuit is the result of the parties' inability to agree about the amount to which ESB is entitled under the Policy, if any.

ESB's interest in the Property derives from a Deed of Trust executed in 2009, whereby ALIJI/AHMAD, a Texas partnership composed of Mazem Aliji and Anwar Ahmad, mortgaged the Property in exchange for a $750,000 loan. Doc. 13-7, Pl.'s App. 142–47. The Deed of Trust obligated the partnership to, *inter alia*, maintain insurance that protected ESB's interest in the Property. *Id.* at 143–44. ESB alleges that Ahmad took over the partnership's obligations under the Deed of Trust in 2010 via an Assumption Deed, which it has not provided in evidence. *See* Doc. 12, Pl.'s Br. in Supp. of Its Resp. ¶ 4 [hereinafter "Pl.'s Br. in Supp."]. Later, Ahmad executed a General Warranty Deed (In Lieu of Foreclosure) to the Property in favor of ESB. Doc. 13-6, Pl.'s App. 134–40. As a result, ESB became the owner of the Property on the effective date of the deed: May 7, 2013.

At some point, Ahmad formed Jungle Jacks, the named insured under the Policy. Doc. 12, Pl.'s Br. in Supp. ¶ 4; *see also* Doc. 13-8, Pl.'s App. 149–50. In ESB's view, the Policy was meant to fulfill Ahmad's obligation under the Deed of Trust, and the designation of CNB as the Loss Payee was simply a mistake. Doc. 12, Pl.'s Br. in Supp. ¶ 5. To support this position, ESB has submitted an affidavit from A.J. Woodall, a Vice President of CNB, who states that CNB was not the owner or

---

[1] Neither USLI nor ESB has submitted evidence regarding the damage to the Property, but both agree that it occurred on or about May 16, 2013. *See* Doc. 1-3, Pl.'s Original Pet. 2; Doc. 22, Def.'s First Am. Answer ¶ 3.

mortgagee of the Property at the time the Policy was executed or at any time since.[2] Doc. 13-5, Pl.'s App. 131. Thus, ESB argues that it, and not CNB, was the intended beneficiary of the Policy. Doc. 12, Pl.'s Br. in Supp. ¶ 16.

In its Motion, USLI seeks summary judgment on the basis that ESB lacks standing to sue under the Policy. USLI offers two grounds for this argument: first, that ESB was not listed as Loss Payee until after the damage occurred, making it a stranger to the Policy; and second, that a Loss Payee does not qualify as a third-party beneficiary of the Policy, meaning that ESB would still lack standing even if it was the Loss Payee. Doc. 9, Def.'s Br. in Supp. of Its Mot. for Summ. J. 6–12 [hereinafter "Def.'s Br. in Supp."]. The same arguments support its position regarding ESB's Texas Insurance Code claims. *Id.* at 12–13. ESB, for its part, contends that it is a third-party beneficiary of the Policy, either express or implied, and, alternatively, that the Loss Payee clause constitutes a separate agreement between it and USLI, which gives it standing. Doc. 12, Pl.'s Br. in Supp. ¶¶ 12–25. It also argues that its late addition to the Policy as Loss Payee does not affect its standing. *Id.* ¶¶ 26–31. USLI has filed its Reply, and so the Motion is ready for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and record evidence, taken as a whole, show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment

---

[2] In its Reply, USLI urges the Court to strike Woodall's affidavit "because it contains statements not shown to be based on personal knowledge and that are speculative, conclusory, legal conclusions, and irrelevant." Doc. 25, Def.'s Reply to Resp. to Mot. for Summ. J. 2 [hereinafter "Def.'s Reply"]. The Court is not persuaded—Woodall attests in the affidavit that his statements are based on personal knowledge, and nothing suggests his assertion that CNB was not the owner or mortgagee of the Property is speculative. It is certainly not irrelevant. The Court therefore denies USLI's motion to strike Woodall's affidavit, to the extent that the request is properly before it. *See* N.D. Tex. R. 5.1(c).

as a matter of law." Fed. R. Civ. P. 56; *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 378 (5th Cir. 2011). Only disputes about material facts preclude a grant of summary judgment, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment must be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The burden is on the movant to prove that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). To meet this burden, the movant must identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (internal quotation marks omitted). Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Id.* (internal citations omitted). Instead, the non-moving party must "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

A non-movant may not simply rely on the Court to sift through the summary judgment record to find a fact issue, but must instead point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Thus, the non-moving party must show that the evidence is sufficient such that a reasonable jury could return a verdict for the non-movant. *Munoz v. Orr*, 200 F.3d 291, 302

(5th Cir. 2000). The Court will not make credibility determinations, weigh the evidence, or draw inferences, but instead confines its inquiry to facts material under the governing legal standard. *Anderson*, 477 U.S. at 255.

## III.

## ANALYSIS

USLI challenges ESB's standing to bring both its breach of contract and Texas Insurance Code claims. The Court notes first that "standing" in this context is a somewhat misleading term, as USLI does not challenge the Court's subject-matter jurisdiction. Rather, standing to sue on a contract is a merits-based determination revolving around the parties' intent. *See Heartland Holdings, Inc. v. U.S. Trust Co. of Tex. N.A.*, 316 S.W.3d 1, 6–7 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Likewise, USLI's contention that ESB lacks standing under the Texas Insurance Code is no more than an argument that it does not qualify as an "insured or beneficiary." *See* Tex. Ins. Code § 541.060(a); Doc. 9, Def.'s Br. in Supp. 12–13. Accordingly, the Court will not conduct a jurisdictional standing analysis, but will instead proceed to consider the merits of the parties' positions.

A.   *Loss Payee Status*

Given that each of ESB's arguments hinges upon whether it can properly be considered the Loss Payee of the Policy with respect to the damage underlying this case, the Court addresses this issue first. USLI asserts that ESB cannot claim Loss Payee status because CNB was the Loss Payee at the time the damage occurred and ESB was not substituted into that role until days later. Doc. 9, Def.'s Br. in Supp. 8; *see also* Doc. 13-4, Pl.'s App. 38–39. ESB disagrees, contending that CNB's designation was merely a "clerical error." Doc. 12, Pl.'s Br. in Supp. ¶¶ 29–31.

USLI relies on a case from the Eastern District of Texas to support its position. In *Pak-Petro, Inc. v. American Western Home Insurance Co.*, No. 12-CV-0247, 2013 WL 5356898 (E.D. Tex. Sept. 9, 2013), the plaintiff, a mortgagee who had purchased the subject property at a foreclosure sale, sued the property's insurer on claims arising out of damage sustained during Hurricane Ike. *Id.* at *2. The plaintiff was not named anywhere in the insurance policy, but the insurer nonetheless issued a mortgagee endorsement after the storm with retroactive effect. *Id.* When the plaintiff requested to be added as a payee on two checks that the insurer had written prior to the endorsement, the insurer refused, which prompted the lawsuit. *Id.* at *2–3. The court, construing only the contract itself, found that the terms of the insurance policy precluded standing because the plaintiff was not added to the contract until after the damage. *Id.* at *5. It also noted that it would reach the same result under an extrinsic evidence analysis, as the summary judgment evidence demonstrated that the insurer "was unaware of [the plaintiff] at the time the policy was executed." *Id.* at *6. The parties' failure to designate the plaintiff as an additional insured further demonstrated that they did not intend to benefit it. *Id.*

*Pak-Petro* is distinguishable. There, neither party disputed that the plaintiff was simply omitted from the insurance policy, and there was no evidence that the insurer even knew there was a mortgagee. Here, by contrast, USLI and Jungle Jacks did designate a Loss Payee, one who—it appears—they believed owned the building. Doc. 13-4, Pl.'s App. 111–12. Thus, USLI was on notice that there was an ownership interest to be protected. Furthermore, ESB is effectively arguing mutual mistake: that the parties' written agreement (the Policy) did not accurately reflect their understanding of the terms (that they were naming the owner of the building as Loss Payee). *See Marcuz v. Marcuz*, 857 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1993, no writ). In such

a situation, a court may properly consider parol evidence. *Id.* The extrinsic evidence in this case, read favorably, supports the conclusion that the designation of CNB as Loss Payee was a mistake. First, there is uncontroverted evidence that, despite being identified as the owner of the Property, CNB had no interest in it at the time the Policy was executed. Doc. 13-5, Pl.'s App. 131. Second, USLI substituted ESB as the Loss Payee on the Policy almost immediately after the damage occurred. Doc. 13-4, Pl.'s App. 38–39. Finally, after the substitution, USLI issued checks payable to Jungle Jacks and ESB, but not to CNB. Doc. 22, Def.'s First Am. Answer ¶ 6. The Court thus concludes that there exists a genuine issue of material fact as to whether the parties to the Policy were mutually mistaken in naming CNB as Loss Payee rather than ESB.

B.    *Breach of Contract*

"Generally, in order to enforce a contract, a litigant must be either a party to that contract or an intended third-party beneficiary." *Heartland Holdings*, 316 S.W.3d at 7. ESB does not argue that it is a party to the Policy, only that it is a third-party beneficiary. Doc. 12, Pl.'s Br. in Supp. ¶¶ 12–13. Alternatively, ESB contends that the Loss Payee clause is a separate contract between it and USLI. *Id.* ¶¶ 23–25. The Court will analyze each argument in turn.

1.    <u>Third-Party Beneficiary</u>

"[T]here is a presumption against conferring third-party-beneficiary status on noncontracting parties," and "[i]n deciding whether a third party may enforce or challenge a contract between others, it is the contracting parties' intent that controls." *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). ESB must make three showings to qualify as a third-party beneficiary under Texas law: (1) it was not privy to the Policy; (2) the Policy was made at least in part for its benefit; and (3) USLI and Jungle Jacks intended that ESB benefit from the Policy. *Palma v. Verex Assurance,*

*Inc.*, 79 F.3d 1453, 1457 (5th Cir. 1996). The Court need not analyze each requirement, however, as ESB cannot show that the Policy was made for its benefit.

### I.     Was the Policy made for ESB's benefit?

To show that the Policy was made for its benefit, ESB must demonstrate that it "is either a donee or creditor beneficiary of, and not one who is benefitted only incidentally by the performance of, the contract." *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999). "A person is a donee beneficiary if the performance promised will come to him as a pure donation." *Lomas*, 223 S.W.3d at 306. One is a creditor beneficiary, on the other hand, when the contract's performance "will come to him in satisfaction of a legal duty owed to him by the promisee." *MCI Telecomms.*, 995 S.W.2d at 651. "Incidental benefits that may flow from a contract to a third party do not confer the right to enforce the contract." *Lomas*, 223 S.W.3d at 306.

Implying that it is a creditor beneficiary, ESB points out that Ahmad owed it a legal duty to maintain insurance protecting its interest in the Property. Doc. 12, Pl.'s Br. in Supp. ¶ 15. But Ahmad was not the promisee under the Policy—Jungle Jacks was. Doc. 13-4, Pl.'s App. 42. ESB tries to circumvent this defect by arguing that Ahmad was fulfilling his duty to ESB by acting through Jungle Jacks. *See* Doc. 12, Pl.'s Br. in Supp. ¶¶ 5, 14. This argument, however, ignores the legal distinction between a corporation and its officers. *Singh v. Duane Morris, L.L.P.*, 338 S.W.3d 176, 181–82 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). With no evidence that Jungle Jacks assumed Ahmad's obligation under the Deed of Trust, or even that it was acting on his behalf, ESB cannot show that it was a creditor beneficiary of the Policy.

Nor does it appear that ESB can show it was a donee beneficiary. Even if ESB is the proper Loss Payee under the Policy, there is no evidence that Jungle Jacks meant to confer that status as a

gift. A gift promise occurs when "the promised performance is not paid for by the recipient, discharges no right that he has against anyone, and is apparently designed to benefit him." Restatement (Second) of Contracts § 302 cmt. c (1981).[3] Here, designating ESB as Loss Payee would discharge ESB's right against Ahmad to be protected under an insurance policy covering the Property. *See* Doc. 13-7, Pl.'s App. 143–44. Thus, the Loss Payee designation cannot properly be considered a gift, meaning that ESB cannot carry its burden to show that the Policy was made for its benefit. It is therefore not an intended third-party beneficiary.[4]

      ii. *Is ESB an implied third-party beneficiary?*

ESB's next argument is ostensibly that it is an implied third-party beneficiary of the Policy. Doc. 12, Pl.'s Br. in Supp. 7. But Texas law is unequivocal that "[a] court will not create a third-party beneficiary contract by implication." *MCI Telecomms.*, 995 S.W.2d at 651. What ESB is truly saying is that it has an equitable lien on the insurance proceeds. Doc. 12, Pl.'s Br. in Supp. ¶¶ 20–22. Regarding a mortgagee's entitlement to such proceeds, "where a mortgagor is charged with the duty of obtaining insurance on property with loss payable to the mortgagee, but the policy does not contain such a provision, equity will treat the policy as having contained the loss payable provision and entitle the mortgagee to recover under the policy." *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52, 55 (Tex. App.—Dallas 1988, writ denied).

The facts of this case do not support applying the equitable lien doctrine. First, the Policy *did*

---

[3] The Texas Supreme Court has cited this section of the Restatement with approval when discussing donee beneficiaries. *See Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002).

[4] The result is the same even when considering the "Additional Insured" endorsement, because an additional insured is only a third-party beneficiary of a contract, at best. *See Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 539 n.4 (S.D. Tex. 2012). Thus, the fact that ESB cannot show that it is a creditor or donee beneficiary is still fatal to its argument.

contain a loss payable clause, and USLI has issued checks payable to ESB. Second, as explained above, the mortgagor (ALIJI/AHMAD or Ahmad) is not a party to the Policy. "[I]f the named insured does not owe the duty to obtain insurance on behalf of the third party, the exception does not apply." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 113 F. Supp. 3d 924, 937 (W.D. Tex. 2015). Here, Jungle Jacks is the named insured, and there is no evidence that it owed ESB a duty to obtain insurance on the latter's behalf. Thus, this argument also fails. As a result, ESB is neither an intended nor an implied third-party beneficiary of the Policy.

  2. <u>Separate Contract</u>

In an attempt to salvage its breach of contract claim, ESB suggests that the Loss Payee clause constitutes a separate contract between it and USLI. Doc. 12, Pl.'s Br. in Supp. 8–9. In support, it cites three cases for the proposition that "Texas courts have held that a mortgagee loss payable clause i[s] an independent contract between the insurer and the mortgagee for the latter's benefit." *Id.* at 8. USLI responds with three arguments: (1) that the Loss Payee clause did not apply to ESB at the time of the damage; (2) that no independent contract came into being because the Loss Payee clause had a precondition that was not fulfilled; and (3) that the cases ESB cites are distinguishable. Doc. 25, Def.'s Reply 9–10.

Two of ESB's cases opine that a "loss payable clause constitutes an independent contract between the insurer and the mortgagee." *Old Am. Mut. Fire Ins. Co. v. Gulf States Fin. Co.*, 73 S.W.3d 394, 398 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Don Chapman Motor Sales, Inc. v. Nat'l Sav. Ins. Co.*, 626 S.W.2d 592, 595–96 (Tex. App.—Austin 1981, writ ref'd n.r.e.). The third merely confirms that "[i]t is sometimes said that the standard mortgage clause creates a separate contract between the insurer and the mortgagee." *SWE Homes, LP v. Wellington Ins. Co.*,

436 S.W.3d 86, 90 (Tex. App.—Houston [14th Dist.] 2014, no pet.). After reviewing the Loss Payee clause in this case, the Court concludes that it does create a separate contract between ESB and USLI.

To begin, it is important to distinguish between two types of loss payee clauses: the open clause and the standard clause. Under a contract with an open clause, "the mortgagee stands in the shoes of the insured, enjoying the same rights as the insured, no more, no less—meaning, if coverage is defeated due to an act of the insured, the mortgagee likewise would be denied recovery." *Id.* at 89. A standard clause, on the other hand, contains language such as "this insurance . . . shall not be invalidated by any act or neglect of the mortgagor." *Id.* (internal quotation marks omitted). Under the standard clause, then, "the mortgagee has rights to recover even when the insured does not." *Id.* at 89–90. It is this type of clause that constitutes a separate contract, *see id.* at 90, and it is the type found in the Policy. Doc. 13-4, Pl.'s App. 39–40. The Court thus concludes that the Loss Payee clause created an independent contract.

This conclusion does not end the inquiry, however. The Loss Payee's right to receive payment under the Policy is contingent upon USLI first denying coverage to the insured "because of [its] acts or because [it] has failed to comply with the terms of this policy." Doc. 13-4, Pl.'s App. 39. ESB has not provided any evidence that USLI ever denied coverage, let alone that it did so as a result of the insured's actions or non-compliance with the Policy.[5] Thus, ESB's rights under the Policy never

---

[5] To trigger the right to payment under the Policy, the Loss Payee was also required to (1) pay the premium under the policy, if the insured failed to do so; (2) submit a "signed, sworn proof of loss within 60 days after receiving notice" that the insured had not done so; and (3) notify USLI of "any change in ownership, occupancy or substantial change in risk" of which the Loss Payee is aware. Doc. 13-4, Pl.'s App. 39. Nothing indicates that ESB did any of these things; there is also no evidence that any of these actions were required under the circumstances, either.

vested, and so it cannot sue to enforce them.

The parties' evidence establishes that ESB is not a third-party beneficiary to the Policy, and that its rights under the Loss Payee clause have not vested. Accordingly, it lacks standing on its breach of contract claim, and USLI is entitled to summary judgment as a matter of law.

C.  *Texas Insurance Code Claims*

USLI relies on the same arguments to defeat ESB's Texas Insurance Code claims—namely, that because ESB is not a party to or third-party beneficiary of the Policy, it does not qualify as an "insured or beneficiary" under the Texas Insurance Code. Doc. 9, Def.'s Br. in Supp. 12–13. Section 541.060 of the Insurance Code provides an aggrieved "insured or beneficiary" with a remedy for unfair insurance settlement practices. Tex. Ins. Code § 541.060(a). Because the Code does not define "insured" or "beneficiary," *see id.* § 541.002, the Court must look to the ordinary meanings of those words. *Hopkins v. Spring Indep. School Dist.*, 736 S.W.2d 617, 619 (Tex. 1987).

Strangely, neither party has relied upon, discussed, or even acknowledged the first endorsement to the Policy, which identifies ESB as an "Additional Insured." Doc. 13-4, Pl.'s App. 36–37. Of course, this might be because the parties know something about this endorsement that the Court does not. But without any explanation of its meaning, the Court will interpret this provision according to its plain meaning: that ESB is an "insured," albeit an "additional" one. ESB would therefore seem to have standing to bring its Texas Insurance Code claims.

ESB's status as an insured is limited, however, to its interest as a mortgagee. *See id.* at 37 ("The person or organization shown in the Schedule is also an insured, but only with respect to liability as mortgagee . . . ."). USLI argues that ESB's interest in the Property as a mortgagee was extinguished when it accepted the General Warranty Deed (In Lieu of Foreclosure) from Ahmad.

Doc. 25, Def.'s Reply 8. Indeed, the Warranty Deed states that it "cancel[s] and extinguish[es]" the promissory note underlying the mortgage, Doc. 13-6, Pl.'s App. 134, but it also explicitly preserves both the Deed of Trust and the lien on the Property it created. *Id.* at 135.

Under Texas law, "[t]here is no such deed as a deed in lieu of foreclosure." *Flag-Redfern Oil Co. v. Humble Expl. Co., Inc.*, 744 S.W.2d 6, 8 (Tex. 1987); *Glenn v. Lucas*, 376 S.W.3d 268, 276 n.14 (Tex. App.—Texarkana 2012, no pet.). Rather, the "deed in lieu of foreclosure" is a *process*—"[a] deed given in satisfaction of a debt may serve as a convenient, efficient transfer of title upon default of a debt." *Flag-Redfern Oil*, 744 S.W.2d at 8. Thus, the deed here is simply a general warranty deed, as it purports to be, that transferred title to the Property to ESB in exchange for "the cancellation and extinguishment of" the promissory note underlying the Deed of Trust.[6] Doc. 13-6, Pl.'s App. 134.

ESB's rights in the Property are beside the point, however; the critical question is whether any indebtedness remains on the mortgage. *See Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 584 (Tex. App.—San Antonio 2002, pet. denied) ("A mortgagee's interest under an insurance policy containing a mortgagee loss-payable clause is limited to the indebtedness that the mortgagor owes under the note and mortgage."). The Court need only determine whether a deficiency remained on the mortgage after Ahmad transferred the Property. *See CWCapital Asset Mgmt. LLC v. Wausau Bus. Ins. Co.*, No. 04-08-0457-CV, 2009 WL 1900413, at *4 (Tex. App.—San Antonio 2009, no pet.) (mem. op.); *cf. Peacock Hosp., Inc. v. Ass'n Cas. Ins. Co.*, 419 S.W.3d 649, 653 (Tex. App.—San Antonio 2013, no pet.) ("If a deficiency remains following the foreclosure, however, the mortgagee

---

[6] Ahmad also received $10 "and other good and valuable consideration." Doc. 13-6, Pl.'s App. 134.

retains a right, but only to the amount of the insurance proceeds necessary to satisfy the deficiency.").[7]

After reviewing the Warranty Deed, the Court is persuaded that ESB accepted it in full satisfaction of the mortgage.[8] Consideration for the Warranty Deed explicitly included "the cancellation and extinguishment of" the promissory note and the "Indebtedness," which is defined as "all such indebtedness under the Note or instruments securing payment of the Note." Doc. 13-6, Pl.'s App. 134–35. The Warranty Deed only mentions deficiency as an exception to ESB's reservation of its right to foreclose on the liens: "Any and all rights of [ESB] to exercise its remedies of foreclosure of any of the Liens . . . are expressly preserved hereby, but *not for purposes of personal deficiency liability of Grantor*." *Id.* at 136 (emphasis added). ESB protests that the Warranty Deed "did not extinguish or relinquish the indebtedness owed on the Property," Doc. 12, Pl.'s Br. in Supp. ¶ 27, but the plain language of the Warranty Deed says otherwise. ESB has offered no other evidence that a deficiency remains on the mortgage, and so the Court must conclude that no such deficiency exists. ESB therefore has no interest in the Property as a mortgagee, meaning that it is not an "insured" under the Policy. Accordingly, summary judgment for USLI is proper on this claim as well.

---

[7] It is worth noting that the General Warranty Deed stipulates that it is to "be interpreted and construed the same as a foreclosure of the Liens," which includes the one created by the Deed of Trust. Doc. 13-6, Pl.'s App. 135.

[8] "The construction of an unambiguous contract is a question of law for the court." *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). Neither party has argued, and the Court does not believe, that the Warranty Deed is ambiguous. Interpretation by the Court is therefore proper.

IV.

CONCLUSION

Based on the foregoing, the Court **GRANTS** USLI's Motion for Summary Judgment and **ORDERS** that ESB's claims against it be **DISMISSED with prejudice**.

**SO ORDERED.**

**SIGNED: February 12, 2016.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE